**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| THE CITY OF ST. CHARLES, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> UNION ELECTRIC COMPANY, d/b/a ) <br> AMEREN MISSOURI, ) <br> ) <br> Defendant. ) | Case No. 4:23-cv-00846-MTS |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs' Motion to Remand, Doc. [24].  Plaintiffs filed their Petition, Doc. [7], in the Circuit Court of St. Charles County, within the State of Missouri.  Defendant then removed the action citing to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446, as well as 42 U.S.C. § 9613(b).  Doc. [1] at 1.  For the reasons discussed below, the Court will grant Plaintiffs' Motion to Remand.

**I.    BACKGROUND**

The present action arises out of the contamination of Elm Point Wellfield, located within the limits of the City of St. Charles, Missouri.  Doc. [7] at 1. Defendant Union Electric Company, d/b/a Ameren Missouri ("Ameren"), owns and operates the Huster Road Substation (the "Substation"), which is adjacent to the Elm Point Wellfield, as well as other drinking water wells, the City of St. Charles's treatment plant, and the City's water system.  *Id.* at ¶¶ 6-7.

While cleaning various aspects of the Substation, Ameren utilized chlorinated solvents containing volatile organic compounds ("VOCs") that produce harmful chemical vapors including tetrachloroethylene ("PCE") and trichloroethylene ("TCE"), both of which are health hazards and likely carcinogens.  *Id.* at ¶¶ 14-17.  At some point after 2020, contaminants were found within the

City of St. Charles's water sources, and eventually four wells were forced to shut down. *Id.* at ¶¶ 33-35. A later soil sampling confirmed the Substation as a source of contamination affecting the City's wells and treatment plant. *Id.* at ¶¶ 22-23, 29.

As part of an attempted remedial effort, Ameren, the Missouri Department of Natural Resources, and the Environmental Protection Agency ("EPA") entered into several Administrative Settlement Agreements and Orders on Consent ("Settlement Agreements"). Doc. [34] at 6-7. The Settlement Agreements were entered into under the authority of the President of the United States, provided in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as delegated to the EPA. Doc. [1-5] at 3. The purpose of the agreements was to determine the extent of the contamination and identify remedial alternatives to mitigate or prevent further contamination. *Id.* at 4. However, despite the parties' intentions, the efforts to eliminate all contaminants from the groundwater. Doc. [7] ¶ 31.

As part of the City's effort to protect the public from the drinking water, the City claims to have incurred "millions of dollars in costs" and additionally claims that a stigma surrounds the City's drinking water as "unsafe as a result of Ameren's contamination." *Id.* ¶¶ 39, 43. In search of relief, Plaintiffs—both the City of St. Charles and the County of St. Charles—asserted nine counts against Defendant including: trespass, temporary private nuisance, permanent private nuisance, public nuisance, negligence, negligence per se, strict liability, statutory trespass to personalty, and unjust enrichment. *Id.* at 11-28. Defendant then removed the action citing to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446, as well as 42 U.S.C. § 9613(b). Doc. [1] at 1. Now, Plaintiffs seek remand to state court.

## II. DISCUSSION

### A. Plaintiffs State Law Claims Do Not "Arise Under" Federal Law.

Federal courts are courts of limited jurisdiction. *Myers v. Richland Cnty.*, 429 F.3d 740, 745 (8th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Congress has authorized the federal district courts to exercise original jurisdiction in 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (quoting 28 U.S.C. § 1331). When a federal district court has original jurisdiction over a civil action brought in state court, a defendant may remove the action to federal district court. 28 U.S.C. § 1441(a). "Removal based on federal question jurisdiction, as in this case, is generally governed by the 'well-pleaded complaint' rule, which provides that federal jurisdiction exists only where a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000).

In *Gunn v. Minton*, the Supreme Court explained that a case can "arise under" federal law in two ways. First, and most commonly, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn*, 568 U.S. at 257 (citing *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). Second, federal courts may still have federal question jurisdiction "even where a claim finds its origins in state rather than federal law" if "a federal issue is: (1) necessarily raised,[1] (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S.

---

[1] While the U.S. Court of Appeals for the Fifth and Eighth Circuits have disagreed as to whether the *Gunn/Grable* test serves as an exception to the well-pleaded complaint rule, this Court finds neither Plaintiffs' Petition nor Plaintiffs' claims "necessarily raise" a federal issue making further inquiry into the matter unnecessary. *Compare Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 711 (8th Cir. 2023) (describing *Gunn* and *Grable* as an "exception" to the well-pleaded complaint rule), *with Box v. PetroTel.*, 33 F.4th 195, 202 (5th Cir. 2022) (saying neither it nor the Supreme Court has ever characterized *Grable* as an "exception to the well-pleaded complaint rule" and that "a plaintiff invoking *Grable* as the basis for federal jurisdiction must *still* show the alleged federal issue arises on the face of the state court petition").

3

at 258 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Federal question jurisdiction via the second path encompasses a "special," "small," and "slim category" of cases and requires that each of those four elements is met. *Gunn*, 568 U.S. at 258 (quoting *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

The parties agree that federal law does not create the causes of action Plaintiffs asserted, Missouri law does. But Defendant maintains that Plaintiffs' action arises under federal law through *Gunn*'s second path, by necessarily raising disputed, substantial federal questions. As the party seeking removal to federal court, Defendant has the burden of establishing subject matter jurisdiction. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). And the Court must resolve any doubts in favor of remand. *Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1270 (8th Cir. 1995). For the reasons discussed below, the Court concludes that Defendant has failed to establish that Plaintiffs' action necessarily raises a federal issue.

"A federal issue is necessarily raised when it 'is a *necessary* element of one of the well-pleaded state claims' in the plaintiff's complaint." *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 711 (8th Cir. 2023), *petition for cert. filed*, No. 23-168 (Aug. 18, 2023) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13 (1983)); *accord Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1266 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023) ("To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." (citation omitted)). "A removing defendant 'should be able to point to the specific elements of [the plaintiff's] state law claims' that require proof under federal law." *Am. Petroleum*

4

*Inst.*, 63 F.4th at 712 (quoting *Iowa Power Coop. v. Midwest Indep. Transmission Sys. Opr., Inc.*, 561 F.3d 904, 914 (8th Cir. 2009)).  Defendant has failed to do so here.

It is not surprising that Defendant failed to point to an essential element of Plaintiffs' claims that *necessarily* raises a federal issue.  Plaintiffs allege that Ameren contaminated Plaintiffs' land and water.  In response to Ameren's contamination, Plaintiffs "proceeded as landowners historically have: They sought remedies . . . in state court under state law."  *See Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1363 (2020) (Gorsuch, J., concurring in part and dissenting in part).  True, when Plaintiffs filed their action in Missouri state court, the EPA already was involved with the cleanup of this pollution (or some of it, anyway), under CERCLA, 42 U.S.C. § 9601 *et seq.*  But the involvement of the EPA does not necessarily raise a federal issue.  CERCLA, after all, does not "strip" state courts of jurisdiction over claims rooted in "other sources of law."  *Id.* at 1349.  Nor does it shield polluters from liability under state law.  *Id.* at 1335 (explaining a polluter "remains potentially liable under state law" even for "landowners' own remediation beyond that required under [CERCLA]"); *accord id.* at 1364 (Gorsuch, J., concurring in part and dissenting in part) ("CERCLA says again and again that it does not impair the rights of individuals under state law.").

Indeed, in *Atlantic Richfield Co. v. Christian*, the Supreme Court found that landowners' common law claims for nuisance, trespass, and strict liability, though stemming from the pollution within a Superfund site, arose under Montana law and not under CERCLA.  *Id.* at 1350.  Especially relevant to this case, the Supreme Court specifically rejected the notion that the landowners' common law claims arose under the federal law as one of *Gunn*'s "'special and small category of cases' that originate under state law yet still arise under federal law for purposes of federal question jurisdiction."  *Id.* at 1350 n.4 (quoting *Gunn*, 568 U.S. at 258).  "To qualify for this narrow

5

exception," the Court explained, "a state law claim must 'necessarily raise[ ]' a federal issue, among other requirements." *Atl. Richfield*, 140 S. Ct. at 1350 n.4.  So too here.[2]

Defendant argues that Plaintiffs' Petition challenges the effectiveness of the remedial action approved by the EPA, and in doing so, raises a federal issue.  Doc. [34] at 12.  Even, for the moment, indulging Ameren in that characterization of Plaintiffs' Petition, Ameren fails to recognize that it still could be liable to Plaintiffs for compensatory damages regardless of whether it complied with the EPA's remedial action, even if the remedial action perfectly met the EPA's goals.  The Supreme Court made clear in *Atlantic Richfield* that a polluter "remains potentially liable under state law for compensatory damages" to the aggrieved landowners and even could be "liable for the landowners' own remediation beyond that required under [CERCLA]," provided the landowners "obtain EPA approval for the remedial work they seek to carry out." *Atl. Richfield*, 140 S. Ct. at 1355.

Despite *Atlantic Richfield* making clear that Ameren remains potentially liable under state law, Defendant points to a decision from the United State District Court for the Northern District of New York to support its argument that this case necessarily raises federal issues.  *See Camillus Clean Air Coal v. Honeywell Int'l, Inc.*, 5:13-cv-00365-FJS, 2013 WL 4774507 (N.D.N.Y. Sept. 4, 2013).  In *Camillus*, the court declined to remand a case with "four state-law causes of action sounding in negligence, nuisance, premises liability, and trespass." *Id.* at *2.  It did so because even a "cursory reading" of the plaintiffs' complaint showed that all of the plaintiffs' state-law claims were based on the plaintiffs' allegations that the defendant had "failed, in various ways, to

---

[2] To be sure, Defendant may try to raise CERCLA as a *defense*, but "[f]ederal jurisdiction cannot be predicated on an actual or anticipated defense." *See id.* (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009)); *see also Am. Petroleum Inst.*, 63 F.4th at 719 (Stras, J., concurring) ("[A] defense, 'even [one that] is anticipated in the plaintiff's complaint, and even if both parties admit that [it] is the only question truly at issue in the case,' is not a reason to remove a case to federal court." (quoting *Franchise Tax Bd.*, 463 U.S. at 14)).

comply with the terms of [a] Consent Decree" that the United States District Court for the Northern District of New York previously entered. *Id.*

*Camillus* offers little in this case.  First, since *Camillus*, the Supreme Court has issued its opinion in *Atlantic Richfield*, making it clear that state common law causes of action do not arise under federal law simply because a claim involves a Superfund site.  Second, unlike *Camillus*, where the plaintiffs' claims were "dependent upon, and inextricably intertwined with, [a] Consent Decree," *id.* at *3, here, Plaintiffs' state law claims take issue with Ameren's "operation and maintenance" of the Substation.  *See, e.g.*, Doc. [7] ¶¶ 50, 56, 66, 72, 88, 99, 107.  Plaintiffs' claims here are not that Defendant has failed or is failing to comply with a consent decree or with an administrative settlement agreement and order on consent.  As explained above, a polluter could fully comply with an administrative settlement agreement and order on consent yet still face potential liability under state law.  *Atl. Richfield*, 140 S. Ct. at 1355.

Because Ameren has not established that federal law is a necessary element to any of Plaintiffs' claims, Ameren has not shown that Plaintiffs' Petition necessarily raises a federal issue. Because the "necessarily raised" element is not satisfied, this case is not one of the special and small category of cases that originate in state law yet still arise under federal law for the purposes of federal question jurisdiction.

### B. Ameren Has Failed to Establish Federal Subject Matter Jurisdiction Under the Federal Officer Removal Statute.

Ameren puts forth another basis for this Court's jurisdiction over this action: the federal officer removal statute.  Doc. [1] ¶ 5; *see also* 28 U.S.C. § 1442.  Congress has "promise[d] a federal forum for any action against an 'officer (or any person acting under that officer) of the United States or any agency thereof, in an official or individual capacity, for or relating to the color of such office.'"  *See BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1536 (2021)

7

(quoting 28 U.S.C. § 1442(a)(1) (hereinafter the "federal officer removal statute")).  The statute "is an exception to the well-pleaded complaint rule." *Graves v. 3M Co.*, 17 F.4th 764, 768 (8th Cir. 2021) (quoting *Kirchner v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)).  It permits a defendant to remove such a state-court action to federal court.

Here, all agree that no party is an officer of the United States.  The statute, though, still permits removal if defendants, "in carrying out the acts that are the subject of the petitioner's complaint, w[ere] acting under any agency or officer of the United States." *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147 (2007).  Therefore, to support removal, the record must establish that (1) the defendant acted under the direction of a federal officer or agency; (2) there is a causal connection between the defendant's actions and the official authority; (3) the defendant has a colorable federal defense to plaintiff's claims; and (4) the defendant is a "person" within the meaning of the statute.  *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1068 (8th Cir. 2023); *see also Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021).

CERCLA authorizes the President to provide for remedial action when a hazardous substance is released, and included within is the requirement that the President must enter into a contract or cooperative agreement with the affected State prior to conducting remedial action.  *See* 42 U.S.C. § 9604(a)(1), (c)(3).  Here, Ameren claims to have "acted under" the direction of a federal agency—the EPA—during the attempted cleanup of the contaminated properties.  Doc. [34] at 21.  Conversely, Plaintiffs argue that the EPA requiring entities to investigate, conduct cleanup activities, and take remedial measures, is not a "delegation of federal authority," but rather, compliance with the law.  Doc. [25] at 17.

The Supreme Court has explained that to "act under" a federal officer, an entity's actions "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior,"

which typically involves "subjection, guidance, or control." *Watson*, 551 U.S. at 151-52.  It does not include simply complying with the law. *Id.* at 152.  Furthermore, it is not enough that a private person or entity operate in an area directed by a federal regulatory agency.  Instead, the entity must help the federal agency fulfill "basic governmental tasks."  *Id.* at 153-54; *see also Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2004).

In *Watson v. Phillip Morris*, the U.S. Court of Appeals for the Eighth Circuit affirmed a district court's holding that a cigarette company properly situated itself within the purview of the federal officer removal statute based upon the Federal Trade Commission's ("FTC") comprehensive and detailed control of cigarette companies' testing and marketing practices; however, Judge Gruender cautioned future litigants of heavily regulated industries from invoking federal officer removal. *See Watson v. Phillip Morris Cos.*, 420 F.3d 852, 861, 863-64 (8th Cir. 2005) (Gruender, J., concurring) (calling it a "rare case" and describing the "FTC's direction and control of the testing and marketing practices at issue" as "extraordinary"), *rev'd*, 551 U.S. 142 (2007).  The Supreme Court reversed the Eighth Circuit and clarified that despite the "considerable regulatory detail and supervision," nothing warranted bringing the FTC-Phillip Morris relationship "within the terms of the statute."  *See Watson*, 551 U.S. at 157.

Just prior to the Supreme Court's decision in *Watson*, the United States District Court for the District of New Jersey, in *Morgan v. Ford Motor Co.*, found subject-matter jurisdiction existed through the federal officer removal statute where the defendants' activities at a Superfund site were governed by consent orders entered into with the EPA pursuant to CERCLA. *Morgan v. Ford Motor Co.*, 3:06-cv-01080-JAP, 2007 WL 2137831, at *1 (D.N.J. July 23, 2007).  As a result, the court denied a motion seeking remand to state court. *Id.*  But after *Watson*, the court ordered new briefing on the issue of federal officer removal.  *Id.*  Following the briefing, the court determined

9

that though the precise issue before the Supreme Court in *Watson* concerned compliance with a federal regulation, and not compliance with a consent order, *Watson* was nonetheless controlling, and the Court remanded the case. *Id.* at *2.

Here, Ameren, the Missouri Department of Natural Resources, and the EPA entered into the Settlement Agreements to perform remedial efforts at the Substation. Doc. [1-5] at 3. Ameren argues the EPA delegated its authority and assumed a supervisory role in relation to Ameren. Doc. [34] at 17. In the Settlement Agreements, the EPA "[o]rdered and agreed" that Ameren should "comply" with the instructions set forth in the Settlement Agreements and retained the right to disapprove of personnel including the Project Coordinator, as well as contractors and subcontractors. Doc. [1-5] at 10-11. The power to control personnel, impose penalties, and mandate compliance with the Settlement Agreement, in Defendant's view, exemplifies that Ameren was in fact acting under the direction of the EPA.

The Court finds Defendant's argument to be "wholly without merit." *See Christian v. BP Amoco Corp.*, 2:08-cv-00045-RFC, 2008 U.S. Dist. LEXIS 123882, at *4 (D. Mont. Dec. 9, 2008). The fact that a federal agency directs, supervises, and monitors a company's activities in detail does not amount to "acting under" for purposes of the federal officer removal statute. *See Watson*, 551 U.S. at 142; *see also W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 2:17-cv-3558, 2020 WL 2842057, at *15 (S.D. W. Va. June 1, 2020), *aff'd*, 23 F.4th 288 (4th Cir. 2022) ("While defendants' conduct may be 'highly supervised and monitored,' mere compliance with the law does not amount to 'acting under' a federal officer for the purposes of 28 U.S.C. § 1442(a)(1).").

Furthermore, there is no causal connection between Ameren's actions and the official authority of the EPA. Historically, to establish a causal connection, "it must appear that the prosecution of [the federal officer] has arisen out of the acts done by him under the color of federal

10

authority and in enforcement of the federal law." *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926); *see also Willingham v. Morgan*, 395 U.S. 402, 409 (1969) (holding that for causation, it must be established that the act subject to the plaintiff's attack occurred while performing official duties). The hurdle created here is low and "[i]t is enough" that the acts or presence during the performance of an official duty "constitute the basis" of the prosecution. *Maryland*, 270 U.S. at 33. Congress later amended the statute in 2011 adding the words "or relating to" into § 1442(a)(1). *See Am. Petroleum Inst.*, 63 F.4th at 714. Despite the amendment, courts have continued to describe the standard as requiring a "causal connection." *See id.* at 715 (citing *Buljic*, 22 F.4th at 738); *see also Graves*, 17 F.4th at 769. Under this standard, a causal connection is established if the charged conduct has a "connection" or "association" with the federal action. *Am. Petroleum Inst.*, 63 F.4th at 715 (citing *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 223 (4th Cir. 2022)).

Albeit a low hurdle, Defendant has failed to establish a causal connection. Here, as discussed previously, the Plaintiffs' claimed violations do not specifically target the cleanup efforts conducted by Ameren. Rather, the state law claims asserted against Ameren concern the initial contamination of the various sources. *See* Doc. [7] ¶¶ 31, 47, 50, 56, 66, 72, 88, 99, 102, 107. The contamination, of course, must occur prior to remedial efforts being weighed and enacted; thus, it cannot plausibly be alleged that the acts causing contamination occurred during the remedial efforts to clean the contamination. *See W. Va. State Univ. Bd. of Governors*, 2020 WL 2842057 at *16-17 (holding that defendants failed to plausibly allege a "connection or association" where the event sued upon "is the contamination of [the plaintiff's] property, not the subsequent EPA plan related to defendants' facility"). Ameren "has failed to demonstrate that when it allegedly contaminated Plaintiffs' property" that it "did so under EPA direction." *See Christian*, 2008 U.S. Dist. LEXIS 123882, at *4; *accord City of Brunswick v. Honeywell Int'l, Inc.*, 2:22-cv-001320-

11

JRH, 2023 WL 5671290, at *4 (S.D. Ga. Sept. 1, 2023), *appeal docketed*, 23-13200 (11th Cir. 2023) ("Defendants fail to satisfy the first prong in demonstrating they were 'acting under' a federal officer, namely the EPA, when they released pollutants into the waters and marshlands on and abutting the City's property.").

For these reasons, Ameren has failed to establish that the Court has subject matter jurisdiction under the federal officer removal statute, and remand is required.

### C. Attorneys' Fees

"An order remanding the case may require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). This Court has "considerable discretion" when determining whether an award of attorney fees is proper. *Wells Fargo Bank. W., Nat'l Ass'n v. Burns*, 100 F. App'x 599, 599 (8th Cir. 2004) (per curiam). However, the standard for an award turns on the reasonableness of removal, and absent unusual circumstances, attorney fees should be awarded only where "the removing party lacked an objectively reasonable basis for seeking removal." *Covenant Corp. v. City of N. Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015) (citing *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 134 (2005)). To determine whether an objectively reasonable basis for seeking removal is present, the court must consider the objective merits at the time of removal. *Covenant Corp.*, 784 F.3d at 483.

Plaintiffs contend that Defendant's removal is unreasonable and warrants attorney fees because there is a "clear absence of federal law" and no federal jurisdiction. Doc. [36] at 20. While the Court has determined remand is proper, the Court concludes Defendant's attempt to remove this action was reasonable. *See, e.g.*, *W. Va. State Univ. Bd. of Governors*, 2020 WL 2842057, at *11, *17 (holding that the defendants were objectively reasonable in seeking removal

12

under § 1442(a)(1) where conducting remedial efforts under the EPA). Therefore, attorney fees are not warranted.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand, Doc. [24], is **GRANTED**.

An Order of Remand will be entered herewith.

Dated this 2nd of November 2023.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　MATTHEW T. SCHELP
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE